UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 2121 JMB |
| | ) | |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Commissioner of Social | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court pursuant to the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("the Act"). The Act authorizes judicial review of the final decision of the Social Security Administration denying Plaintiff Linda B.'s ("Plaintiff") application for disability benefits under Title II of the Social Security Act, see 42 U.S.C. §§ 401 et seq. All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c). Substantial evidence supports the Commissioner's decision, and therefore it is affirmed. See 42 U.S.C. § 405(g).

## I. Procedural History

On February 9, 2016, Plaintiff filed an application for disability benefits, alleging that her disability began on June 5, 2014,[2] as a result of fibromyalgia, spinal stenosis, and chronic pain.

---

[1] After the case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] Plaintiff amended her alleged onset date from July 20, 2011, to June 5, 2014. (Tr. 35, 170)

(Tr. 73, 156-57)  On March 3, 2016, Plaintiff's claims were denied upon initial consideration.  (Tr. 73-77)  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at the hearing (with counsel) on October 13, 2017, and testified concerning the nature of her disability, her functional limitations, and her past work.  (Tr. 30-63)  The ALJ also heard testimony from Denise Weaver, a vocational expert ("VE").  (Tr. 53-62, 264)  The VE opined as to Plaintiff's ability to perform her past relevant work and to secure other work in the national economy, based upon Plaintiff's functional limitations, age, and education.  (Id.)  After taking Plaintiff's testimony, considering the VE's testimony, and reviewing the rest of the evidence of record, the ALJ issued a decision on March 30, 2018, finding that Plaintiff was not disabled, and therefore denying benefits.  (Tr. 7-20)

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration ("SSA").  (Tr. 1-6)  On November 5, 2018, the Appeals Council denied review of Plaintiff's claims, making the March 30, 2018, decision of the ALJ the final decision of the Commissioner.  Plaintiff has therefore exhausted his administrative remedies, and his appeal is properly before this Court.  See 42 U.S.C. § 405(g).

In her brief to this Court, Plaintiff raises two related issues.  First, Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Richard Noble's opinions in his medical source statement.  Second, she argues that the ALJ's Residual Function Capacity ("RFC") determination is not supported by substantial evidence.  The Commissioner filed a detailed brief in opposition.

As explained below, the Court has considered the entire record in this matter.  Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

## II.  <u>Medical Records</u>

The administrative record before this Court includes medical records concerning Plaintiff's

health treatment from October 28, 2010, through September 22, 2017. The Court has considered the entire record. The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case.

A. **Quincy Medical Group** (282-386, 388-89)

Between October 28, 2010, and September 22, 2017, a number of doctors on staff at Quincy Medical Group treated Plaintiff.

Plaintiff started treatment for fibromyalgia on October 28, 2010, with Dr. Richard Noble, a family practitioner.[3] Plaintiff reported intermittent pain. Dr. Noble encouraged Plaintiff to exercise. Examination showed tenderness of back with scattered trigger points. Plaintiff reported her pain was exacerbated by physical activity. Although Plaintiff indicated that she needed help lifting 30-40 pounds, she reported being able to perform all of her activities of daily living and her household chores. Plaintiff reported smoking two packs of cigarettes a day for thirty years. Examination showed full neck, shoulder, and spine range of motion, tenderness to palpation from cervical spine to lumbar region, and tenderness to palpation at many of the fibromyalgia criteria points. Dr. Noble explained how Plaintiff's tobacco abuse affects her musculoskeletal pain.

On November 16, 2010, Plaintiff reported back pain and generalized body aches. Treatment that day mirrored the October 28, 2010, treatment.

On November 16, 2010, on consultation, Dr. Theresa Newton treated Plaintiff of fibromyalgia symptoms. Plaintiff reported generalized body aches which had worsened in the last couple of years.

Plaintiff returned on February 28, 2011, to Dr. Noble and reported she increased intake of hydrocodone due to her constant pain. Plaintiff indicated that she had been exercising and has a

---

[3] The undersigned notes that Dr. Noble is not a specialist in fibromyalgia or chronic pain.

consultative appointment for possible trigger point injections.

On April 12, 2011, Dr. Newton treated Plaintiff's fibromyalgia symptoms, and Plaintiff requested a trigger point injection. Examination showed significant trigger points resulting in some mild limitation in her range of motion of her cervical back. Dr. Newton administered a trigger point injection.

On May 18, 2011, Dr. Noble increased Plaintiff's OxyContin dosage, and she reported improvement with her pain.

In follow-up treatment on May 24, 2011, Plaintiff reported that the trigger point injection decreased her neck pain. Dr. Newton administered another trigger point injection.

On June 13, 2011, and Dr. Noble adjusted her medication regimen. On July 12, 2011, Plaintiff complained of continued weight gain with her fibromyalgia medication even though she monitored her caloric intake and regularly exercised.

In follow-up treatment on August 19, 2011, Plaintiff reported a weight gain despite exercising but she admitted to not consistently watching her caloric intake. Plaintiff reported that her fibromyalgia was stable on her present therapy. Dr. Noble adjusted Plaintiff's medication regimen. On November 21, 2011, Plaintiff reported that she continued to do fairly well and had noticed improvement. Dr. Noble adjusted her medication regimen.

On March 21, 2012, Plaintiff reported overall improvement with her chronic pain and discomfort over the warmer weather.

Plaintiff returned on September 11, 2012, and reported intensification of her pain after a several-mile motorcycle ride. Plaintiff reported exercising. Dr. Noble adjusted her medication regimen.

On May 20, 2013, Plaintiff returned for six-month treatment of fibromyalgia and chronic

pain syndrome and reported that her symptoms had remained stable. Plaintiff noted that she experiences exacerbation following motorcycle rides. Dr. Noble continued Plaintiff's medication regimen.

Plaintiff returned on March 11, 2014, for a six-month follow-up for her chronic fibromyalgia and chronic pain syndrome. Plaintiff reported that she continued to experience her fibromyalgia symptoms but the symptoms had improved. Examination showed join tenderness. Dr. Noble recommended weight loss and regular physical and aerobic activity.

On June 20, 2014, Plaintiff complained of lower back pain stemming from a motor vehicle accident. Examination of her lower back showed a good range of motion with no restrictions and tenderness and negative straight leg raising. Dr. Noble continued her medication regimen. Plaintiff returned on July 3, 2014, and reported continued neck, left low back, and lumbar region pain. Examination showed a full range of motion of her shoulders, left lumbar tenderness, and negative straight leg raising. Dr. Noble continued her medication regimen for neck and low back pain and urged Plaintiff to remain active and less sedentary.

On July 31, 2014, Plaintiff presented for follow-up treatment of injuries she sustained in a motor vehicle accident and right elbow pain. Plaintiff reported significant benefit of her right-sided posterior neck and medial trapezial border pain and almost returning back to her normal baseline pain of fibromyalgia. Examination showed a full range of motion of her neck and tenderness.

During follow-up treatment for neck and elbow pain on August 27, 2014, Plaintiff complained of neck pain across both of her shoulders. Plaintiff reported a 50% improvement with medical management and physical therapy since the accident and an increased range of motion in her neck with less discomfort. Plaintiff indicated that she had returned to normal daily activities

and continued with therapy. Examination of her neck showed full passive range of motion with tenderness but no spasms or trigger points. Dr. Noble observed that Plaintiff could get up and down from the examination table without any problem. Dr. Noble found Plaintiff's motor strength in her upper extremities to be intact and symmetric, and her grip strength intact. Dr. Noble found that Plaintiff was slowly improving with physical therapy and home exercises as well as medical management.

Plaintiff returned on October 15, 2014, complaining of chronic severe neck pain with paresthesia into her right arm and hand. Plaintiff reported that she first experienced her symptoms after a motor vehicle accident. Plaintiff reported that her pain interfered with her ability to function and her quality of life and weaknesses in her hands and arms associated with pain. Hydrocodone helped relieve her pain. Examination showed adequate and functional range of motion of her extremities, strength functionally intact, significant tenderness to palpitation of her cervical spine. Dr. Howard Dedes noted that a review of an MRI of her cervical spine showed spondylosis with disc degeneration, and an x-ray showed mild intervertebral disc space narrowing but no acute fractures. Dr. Dedes found that Plaintiff's symptoms appeared to be consistent with a myofascial cervical strain and underlying facet syndrome. Dr. Dedes noted that Plaintiff should continue physical therapy for her spinal range of motion, with an emphasis on extremity range of motion, and a home exercise program.

On November 11, 2014, Plaintiff returned for follow-up treatment for her chronic pain. Plaintiff reported that her pain was fairly stabilized, and she was not exercising regularly. Dr. Noble noted that Plaintiff should resume pain management. Dr. Noble medically cleared Plaintiff from her motor vehicle accident finding her stabilized with persistent pain. In follow-up treatment on March 17, 2015, Plaintiff reported having an intense intractable headache and receiving

treatment in the emergency room for sinusitis with no improvement.

On August 12, 2015, Plaintiff returned for her six-month medicine management for fibromyalgia and chronic pain syndrome. Plaintiff reported walking on a consistent basis and no longer receiving pain management treatment at Blessing Hospital. Dr. Noble adjusted Plaintiff's medication regimen. During treatment on December 29, 2015, Nurse Practitioner Heather Leindecker treated Plaintiff for a cough, nasal congestion, and ear pain. Plaintiff requested a shot if possible because she was leaving for a vacation the next day. Examination showed a supple neck and cervical adenopathy. Nurse Leindecker prescribed medications and advised Plaintiff to avoid smoking

Plaintiff returned on July 5, 2016, for follow-up pain management of fibromyalgia and myofascial pain. Plaintiff reported continued extreme pain over her posterior neck muscles and lower back and that her activity was minimized by her pain. A fourteen-point review of her systems was otherwise negative. Examination showed skeletal tenderness of her lower back. Dr. Noble continued Plaintiff's pain management regimen and stressed exercise and tobacco cessation.

In follow-up treatment on January 11, 2017, Plaintiff reported depression and self-medicating with food. On July 24, 2017, Plaintiff reported right hip pain. Examination showed tenderness in her lower lumbar spine. Dr. Noble continued Plaintiff's pain management regimen and encouraged Plaintiff to do a walking exercise program and stop smoking.

On September 22, 2017, Dr. Noble discussed long-term management of Plaintiff's anti-inflammatory medications, weight loss for osteoarthritis and destressing joints, exercising, and management of fibromyalgia and chronic pain. An x-ray showed spondylosis of the lumbar spine without acute fracture.

B.    **Blessing Hospital** (Tr.269-81)

Between June 5, 2014, and March 15,  2015, a number of doctors on staff at Blessing Hospital treated Plaintiff.

On June 5, 2014, Plaintiff presented in the emergency room, complaining of moderate neck pain, headaches, and a head injury as result of a motor vehicle accident.  An CT of her brain showed no acute changes.  An x-ray of her cervical spine showed mild intervertebral disc space narrowing, no acute fractures detected, and multilevel spondylosis.  The treating doctor gave her a cervical collar.

On October 10, 2014, Plaintiff sought treatment for chronic neck pain and decreased range of motion in her neck.  The treating doctor found Plaintiff had a mild impingement.

On March 15, 2015, Plaintiff received treatment for acute sinusitis.

## II.    **Opinion Evidence**

A.    **Dr. Noble's MSS** (Tr. 418-21)

On October 19, 2017, Dr. Noble completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS") in a checklist format and answered questions regarding Plaintiff's impairments.  Dr. Noble opined that:  Plaintiff could lift less than ten pounds occasionally; sit less than two hours; stand less than two hours; and walk less than two hours in an eight-hour workday.   In support of these limitations, Dr. Noble listed Plaintiff's medical conditions, including fibromyalgia, chronic pain syndrome, and generalized osteoarthritis.  Dr. Noble further opined that Plaintiff can never stoop, crouch, or climb stairs or ladders.  As to manipulative functions, Dr. Noble opined that Plaintiff can occasionally reach, handle, or finger, and never push/pull. Next, Dr. Noble noted that Plaintiff would miss more than four days of work each month, she would be off task 25% or more each workday, and she would need to take an

unscheduled breaks too often for productive employment.

**B.** **Function Reports** (Tr. 193-226)

In a Function Report Adult -Third Party, Plaintiff's husband listed Plaintiff's activities and interests as cooking, light cleaning, shopping twice a week, watching television, texting, and using Facebook.

In a Function Report-Adult, Plaintiff reported helping care for her four-year old granddaughter, preparing meals, doing light housework, driving, working on the computer for an hour at a time, visiting with family, and going to lunch a couple times a month as her activities.

**IV.** **The Hearing Before the ALJ**

The ALJ conducted a hearing on October 13, 2017. Plaintiff was present with an attorney and testified. The VE also testified. (Tr. 30-62)

**A.** **Plaintiff's Testimony**

Plaintiff began her testimony by noting that she lives with her husband and pets. (Tr. 36) Plaintiff testified that she drives to doctor's appointments. (Tr. 37)

Plaintiff testified that she last worked as an eligibility specialist in 2011. Her job duties included filing out applications for clients, data entry, and lifting twenty to thirty pounds. (Tr. 39-40) After working eighteen years in this position, Plaintiff was laid off. (Tr. 37) Plaintiff testified that she could no longer perform that work because she cannot sit and work on a computer all day. (Tr. 53)

On June 5, 2014, Plaintiff was involved in a motor vehicle accident. (Tr. 40) Plaintiff received treatment in the emergency room for a concussion she sustained in the accident. Plaintiff wore a cervical collar and participated in physical therapy for three months. (Tr.41)

Plaintiff testified that she continued to have limited range of motion in her neck and that

turning her head results in constant pain. As treatment, Plaintiff participated in massage and physical therapy, used a TENS unis three to four times a day, and applied heat. Plaintiff testified that Dr. Noble had recommended surgery for her spinal stenosis but he was deferring not to surgery and to Plaintiff's ability to tolerate her pain. (Tr. 42) Plaintiff testified that she experiences neck pain radiating into her arms and elbow pain. (Tr. 43) Plaintiff experiences migraine headaches two to three times a month, and she has taken hydrocodone for relief since 2013. (Tr. 44-45) Plaintiff testified that she has sixteen trigger points and experiences daily pain. (Tr. 46) Plaintiff testified that Dr. Noble also treats her depression with two antidepressants.

Plaintiff testified that using a computer for twenty minutes triggers her arm pain, and she cannot lift her arms above her head. (Tr. 43)

Plaintiff testified that in a typical day, she moves between the rooms of the house changing positions. (Tr.49) Plaintiff has problems gripping and dropping things. (Tr. 50) Plaintiff testified that her husband does the grocery shopping and household chores except for dusting. (Tr. 51)

**B.     The VE's Testimony**

The VE identified Plaintiff's past work as an eligibility worker, a sedentary job with a lifting requirement. (Tr. 54)

The ALJ asked the VE a series of hypothetical questions to determine whether someone with Plaintiff's age, education, work experience, and specific functional limitations would be able to find a job in the local or national economy. (Tr. 55) First, the ALJ asked the VE to assume a hypothetical individual limited to light work with no climbing on ropes, ladders, or scaffolds; no more than occasional climbing on ramps or stairs, stooping, kneeling, crouching, or crawling; and no exposure to concentrated vibration or work hazards and being around dangerous moving machinery. The VE responded that such a hypothetical person would be able to perform Plaintiff's

past work.  The ALJ next included an additional restriction of a sit/stand option allowing a change of position every thirty to sixty minutes for a few minutes at a time while remaining at the workstation with no loss of production.  The VE testified that such individual could perform the eligibility worker job so long as the person remained at the workstation and on task.  The ALJ added another limitation requiring more frequent altering of positions.  (Tr. 55)  The VE indicated that the individual would not be able to perform the duties because the increased frequency would decrease productivity and likely cause a problem remaining on task.

Next, the ALJ added a light exertional level with some posture limitations and a sit/stand option every thirty to sixty minutes.  (Tr. 56)  The VE indicated that there would be other jobs available such as a garment sorter, a folding machine operator in the clerical industry, and a routing clerk to the hypothetical person.  (Tr. 56-57)

The VE opined that if the ALJ reduced the sit/stand option to alternating every twenty minutes, there would be no work available.  (Tr. 57)  The ALJ asked whether a person further restricted to understand, remember, and carry out simple instructions consistent with unskilled work could perform Plaintiff's past relevant work.  The VE indicated that such person could not perform Plaintiff's past relevant work but such a person could work the other jobs he identified.  (Tr. 58)

**V.  The ALJ's Decision**

In a decision dated March 30, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  (Tr. 12-20)  The ALJ determined that Plaintiff had severe impairments of fibromyalgia, generalized osteoarthritis, degenerative disc disease and spondylosis, and chronic myofascial pain/chronic pain syndrome.  (Tr. 13-14)[4]  The ALJ

---

[4] The ALJ also considered several other conditions and specifically found those conditions to be

determined that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following modifications: (1) she required a sit/stand option allowing change in position every 30-60 minutes, for a few minutes at a time, while remaining at the workstation (with no loss in production); (2) she can never climb on ropes, ladders, or scaffolds; (3) she can occasionally climb on ramps/stairs, stoop, kneel, crouch, or crawl; and (4) she has to avoid concentrated exposure to vibration and work hazards such as unprotected heights and being around dangerous moving machinery, (Tr. 14-15)

The ALJ identified that Plaintiff's past relevant work as an eligibility worker, sedentary work performed at medium exertional level, and she cannot return to past relevant work. (Tr. 18) The ALJ found, based on the VE's testimony, that there are other jobs existing in the national economy she was able to perform the requirements of representative occupation such as a garment sorter, folding machine operator, and routing clerk. (Tr. 19) Therefore, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act. (Tr. 20)

The ALJ's decision is discussed in greater detail below in the context of the issues Plaintiff has raised in this matter.

## VI. Standard of Review and Legal Framework

"To be eligible for … benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A)

---

non-severe. Plaintiff does not argue that the ALJ erred in this regard.

and 1382c (a)(3)(A). A plaintiff will be found to have a disability "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [her] previous work but cannot, considering [his] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether: (1) the claimant was employed; (2) [he] was severely impaired; (3) [his] impairment was, or was comparable to, a listed impairment; (4) [he] could perform past relevant work; and if not, (5) whether [he] could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."

Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1.  The credibility findings made by the ALJ.
2.  The claimant's vocational factors.
3.  The medical evidence from treating and consulting physicians.
4.  The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5.  Any corroboration by third parties of the claimant's impairments.
6.  The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VII.   Analysis of Issues Presented

In her brief to this Court, Plaintiff challenges the weight the ALJ accorded to Dr. Noble's opinions in the MSS as her treating doctor. Plaintiff also challenges the ALJ's RFC determination as not being supported by substantial evidence.

A.    **Dr. Noble**

Plaintiff contends that the ALJ should have given more weight to the opinions reflected in Dr. Noble's MSS. Plaintiff notes that Dr. Noble was her treating doctor. Plaintiff notes that her case was filed before March 27, 2017. Therefore, the ALJ was required to apply the criteria set forth in § 404.1527. As explained below, the Court finds that the ALJ's decision considers the appropriate criteria for assessing the opinion of a treating doctor, and further finds that substantial evidence supports the ALJ's decision to discount Dr. Noble's opinions.

In the MSS, Dr. Noble opined that Plaintiff could lift less than ten pounds occasionally; sit less than two hours; stand less than two hours; and walk less than two hours in an eight-hour workday. Dr. Noble further opined that Plaintiff can never stoop, crouch, or climb stairs or ladders. As to her manipulative functions, Dr. Noble opined that Plaintiff can occasionally reach, handle, or finger, and never push/pull. Next, Dr. Noble noted that Plaintiff would miss more than four days of work each month; she would be off task 25% or more each workday; and she would need to take an unscheduled breaks too often for productive employment. In support of these limitations, Dr. Noble listed Plaintiff's medical conditions including fibromyalgia, chronic pain syndrome, and generalized osteoarthritis.

The ALJ afforded Dr. Noble's opinions in the MSS little weight because the severity of his limitations was not consistent with Plaintiff's longitudinal medical history consisting of conservative and routine treatment, her medical imaging and examinations showing intact strength and comfortable movement, her previous ability to work with many of her conditions, her activities of daily living, and Dr. Noble's prior recommendations for Plaintiff to remain active and less sedentary. The ALJ also opined that Dr. Noble cited minimal medical evidence in support and gave little explanation for his findings. The ALJ outlined Dr. Noble's treatment records, other

examining doctors, and medical imaging which did not support the marked functional limitations in Dr. Noble's MSS and showed routinely normal or otherwise objective testing results.

The record before the Court shows that Dr. Noble treated Plaintiff a total of twenty[5] times for her alleged disabling impairments between October 28, 2010, and September 2, 2017, before completing the MSS. See 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treated source has treated [a claimant] and the more times [a claimant] has been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion."). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Reece v. Colvin, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" Id. (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotations omitted). "Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so." Prosch, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

A review of the MSS shows that it was based on no objective testing or reasoning, such as

---

[5] Although Plaintiff asserts that Dr. Noble treated her twenty eight times, the record shows that Dr. Howard Dedes treated her on October 15, 2014, Theresa Newton, D.O. treated her on November 16, 2010, and on April 12 and May 18, 2011, and Dr. Dennis Ozment treated her on August 23, 2016. (Tr. 286, 345, 351, 391) Moreover, on three occasions, Dr. Noble treated Plaintiff for other ailments, including a headaches, cough and congestion, and a lump on her right arm, not her alleged disabling impairments. (Tr. 292, 296, 372)

range of motion testing or positive straight leg raise, which would indicate why Plaintiff's function needed to be so restricted. See Julin v. Colvin, 826 F.3d 1082, 1089 (8th Cir. 2016) (affirming the rejection of a medical opinion because it was conclusory.). In support of the limitations set forth in the MSS, Dr. Noble cited to Plaintiff's fibromyalgia, chronic pain syndrome, and generalized osteoarthritis without any explanation how these impairments would result in such functional limitations.

The ALJ accorded Dr. Noble's opinion only little weight as the MSS was inconsistent with the objective medical record, including Dr. Noble's own treating notes. See McCoy v. Astrue, 648 F.3d 605, 616-17 (8th Cir. 2011) (ALJ may reject a medical opinion if it is "inconsistent with the record as a whole" or "based, at least in part, on [the claimant's] self-reported symptoms" where the claimant is deemed not credible). Significantly, as reflected in his own treatment records, Dr. Noble physical examinations showed Plaintiff's strength was normal and negative straight leg raise, and he never imposed any of the physical or functional limitations set out in his MSS but instead encouraged Plaintiff to exercise and remain active. See Toland v. Colvin, 761 F.3d 931, 935-36 (8th Cir. 2014) (finding that "ALJ had sufficient reason to discount" treating provider's opinion where he "included limitations in the MSS that are not reflected in any treatment notes or medical records") (quotation marks and citation omitted); Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (affirming ALJ's rejection of treating physician's opinions about plaintiff's exertional limitations that "[were] not reflected in any treatment notes or medical records.").

In assigning little weight to Dr. Noble's MSS, the ALJ also concluded that the MSS was inconsistent with Plaintiff's self-reported daily activities, which the ALJ fairly viewed to undercut Dr. Noble's MSS. "[O]ther evidence in the record also supports the ALJ's decision not to accord [Dr. Noble's] opinion controlling weight." Reece, 834 F.3d at 910 (finding that "Commissioner

gave good reasons for discounting" treating doctor's opinion where his findings were, *inter alia*, "highly inconsistent with the objective medical evidence in the record" and "other evidence in the record[.]").

Overall, the medical evidence shows that Plaintiff received routine and conservative medical treatment, mostly limited to office visits and medication management, and her provider recommended such conservative care. See Robinson v. Sullivan, 956 F.2d 936, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015). In fact, the evidence shows Plaintiff's symptoms improved with conservative medical treatment, and the objective testing revealed no functional limitations.

The Court finds that the ALJ gave proper weight to the opinions of Dr. Noble set forth in the MSS.[6] See Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (finding no error in decision to discount "cursory checklist statement" that include[d] significant impairments and limitations that are absent from [provider's] treatment notes and [plaintiff's] medical records."); Anderson, 696 F.3d at 793-94 (holding that "a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration" and that it is proper for ALJ to discount a provider statement that "contained limitations that 'stand alone,' did not exist in the physician's treating notes, and were not corroborated through objective medical testing").

The ALJ sufficiently explained her reasons for giving Dr. Noble's marked functional limitations in the MSS little weight as inconsistencies between the objective medical evidence,

---

[6] The undersigned also notes that Dr. Noble completed the MSS one month after last treating Plaintiff, and the MSS was only a series of check marks to assess the functional limitations of Plaintiff with little or no explanation of the finding, no medical evidence or objective testing in support. Further, the MSS appears to have been procured by, and submitted to, Plaintiff's counsel.

Plaintiff's daily activities, examination findings, Dr. Noble's own treatment records, and Plaintiff's conservative and routine treatment. Viewing the ALJ's opinion in light of the record as a whole, substantial evidence supports the ALJ's decision to assign little weight to Dr. Noble's opinions in the MSS. See Cline v. Colvin, 771 F.3d 1098, 1104 (8th Cir. 2014) (finding no error in decision to discount "cursory checklist statement" that "include[d] significant impairments and limitations that are absent from [provider's] treatment notes and [claimant's] medical records"); Prosch, 201 F.3d at 1013 (internal inconsistency and conflict with other evidence on the record constitute good reasons to assign lesser weight to a treating physician's opinion).

### B.      Residual Functional Capacity

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ made serious errors in assessing the evidence. Notably, Plaintiff does no identify which, if any, specific RFC finding and/or limitation is not supported by the record. The burden to establish a plaintiff's RFC rests with the plaintiff. Pearsall, 274 F.3d at 1217. An ALJ is not required to disprove every possible impairment. McCoy, 648 F.3d at 612. By arguing generally that the limitations set out in the RFC are not supported by the record, without specifying what additional limitations are warranted by the evidence, Plaintiff essentially asks the Court to reweigh the evidence or review the factual record de novo, which the undersigned cannot do. See Smith v. Colvin, 756 F.3d 621, 626 (8th Cir. 2014). Based on the administrative record and the ALJ's thorough summary of the record, the undersigned cannot say that the ALJ overlooked any of Plaintiff's limitations when assessing her RFC.

In her Reply brief, Plaintiff argues that the ALJ failed to support her physical RFC determination with some medical evidence at step 5, citing Weddle v. Berryhill, 2018 WL 6064867 (E.D. Mo. Nov. 20. 2018) (finding the record is underdeveloped because there is no firsthand

medical evidence for the step 5 analysis.).  Plaintiff argues that there was no state agency physician who reviewed her physical impairment and no consultative examination was performed.

A claimant's RFC is the most an individual can do despite the combined effects of his credible limitations.  See 20 C.F.R. § 404.1545.  "The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'" Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (S.S.A. 1996)).  An ALJ's RFC finding is based on all of the record evidence, the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010); see also 20 C.F.R. § 404.1545; SSR 96-8p (listing factors to be considered when assessing a claimant's RFC, including medical source statements, recorded observations, and "effects of symptoms … that are reasonably attributed to a medically determinable impairment.").  The ALJ must explain her assessment of the RFC with specific references to the record.  SSR 96-8 (the RFC assessment must cite "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" in describing how the evidence supports each conclusion).  Throughout this inquiry, the burden of persuasion to prove disability and to demonstrate RFC is on the claimant.  Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).  Disability is not determined by the presence of impairments, but by the effect the impairments have on the individual's ability to perform substantial gainful activity.

According limited weight to opinion evidence does not necessarily render the record devoid of substantial evidence upon which an ALJ can base her decision.  The limitation of opinion evidence does not undermine an ALJ's RFC determination where other medical evidence in the record supports the finding.  See Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007); see also Zeiler

v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (lack of opinion evidence not fatal to RFC determination where ALJ properly considered available medical and testimonial evidence.); Sampson v. Apfel, 165 F.3d 616 (8th Cir. 1999) (although ALJ discounted the only opinion evidence of record, a review of the entirety of the medical record provided substantial evidence on the record as a whole to support the ALJ's decision.).

A review of the record shows that there was substantial medical and other evidence upon which the ALJ could base her decision, even with the little weight accorded to Dr. Noble's MSS. This evidence includes Dr. Noble's treatment notes that recorded his findings of mostly normal physical findings such as good spinal range of motion, no neck spasms or trigger points, full shoulder range of motion, negative Spurling's test, full joint range of motion, no active synovitis, no crepitation, intact deep tendon reflexes, 5/5 strength throughout including intact grip strength, negative straight leg raise, no difficulty getting up and down from the examination table, and functional gait without an assistive device. The record also shows that Plaintiff received routine and conservative care from Dr. Noble. Indeed, Dr. Noble encouraged Plaintiff to exercise, remain active, and be less sedentary.

The ALJ also considered the inconsistencies in the record. The ALJ noted that although Plaintiff had a long history of fibromyalgia and chronic pain syndrome, she had previously been able to work despite these conditions. See, e.g., Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls extreme fatigue, Van Vickle continued working for over four years.").

The ALJ also considered Plaintiff's daily activities as inconsistent with subjective complaints of disabling impairments. The ALJ noted that Plaintiff helped care for her four-year old granddaughter, used the computer for an hour at a time, cooked complete meals three to five

times a week, shopped for groceries weekly, performed light cleaning such as sweeping and dusting, drove, managed finances, watched television, and used Facebook. The Eighth Circuit holds that allegations of disabling pain may be discredited by evidence of daily activities inconsistent with such allegations. Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001).

The ALJ determined Plaintiff's physical RFC based on all of the relevant, credible evidence in the record. See McKinney v. Apfel, 228 F.3d 860, 863(8th Cir. 2000); see also Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Medical records, physician observations, and the claimant's subjective statements about his capabilities may be used to support the RFC."); Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) ("The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence."). In this case, there was "some medical evidence" in the record as to Plaintiff's "ability to function in the workplace" to support the ALJ's RFC determination. Cox, 495 F.3d at 618. While the medical evidence discussed by the ALJ did not explicitly attest to Plaintiff's employability, the evidence does allow for an understanding of how Plaintiff's limitations function in a work environment.

Based on the objective medical evidence and Plaintiff's testimony and after evaluating Plaintiff's subjective symptoms, the ALJ determined that Plaintiff retained the RFC to perform light work[7] with additional enumerated limitations/restrictions. The ALJ further explained that she accounted for Plaintiff's "diffuse pain, periodic hand pain, occasional spasms, and decreased mobility from fibromyalgia, generalized osteoarthritis, degenerative disc disease and spondylosis,

---

[7] "According to the regulations, 'light work' is generally characterized as (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects." Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001) (citing 20 C.F.R. § 404.1567(b)).

and chronic myofascial pain/chronic pain syndrome by limiting her to light work with a sit/stand option." (Tr. 17) As detailed by the ALJ and throughout her decision, there was sufficient other medical evidence of record supporting the determination that Plaintiff had the RFC to perform light work with additional restrictions. Accordingly, it cannot be said that the ALJ's decision is not supported by substantial evidence on the record as a whole.

Because the ALJ based her RFC assessment upon review of all the credible, relevant evidence of record, and the RFC is supported by some medical evidence, it will not be disturbed. See Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003).

## VIII. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." Id. Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Id.; see also Igo v. Colvin, 839 F.3d 724, 728 (8th Cir. 2016). For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole. See Finch, 547 F.3d at 935. Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case. See Buckner, 646 F.3d at 556. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*

JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2020.